Thank you, Your Honor. May it please the Court. I am Petter Batalden, representing the Appellant National Farm Financial Corporation. I will be sharing time with Mr. Kachef, who will present separate arguments on behalf of Appellant Larry Chow. This is a case about a contract that was never formed. A buyer, PSM, and a seller, National Farm, negotiated at length, trying to arrange for the purchase of National Farm's main asset, an insurance company called BAIC. BAIC was built from scratch into a multimillion-dollar insurance company through the dedication and hard work of Larry and Julie Chow. To effectuate this transaction, PSM drafted a proposed stock purchase agreement, but only two of the five parties signed the agreement, and neither was the seller. One provision of the agreement, Section 14.11, says that the agreement will become binding when all five parties have signed it. That never happened here. The failure of three parties to sign the agreement prevented the contract from being formed, and in the absence of a binding agreement, the judgment should be reversed because it is based exclusively on a claim for breach of contract. The district court, I take it, found ambiguity, either in the counterpart's provision or in the counterpart's provision construed in light of the severability provision. I'm not quite sure which. There was some lack of clarity about the district court's ruling, Your Honor. I just wonder if you had a perspective on what it is that the district court found. My understanding of the district court's comments on the record during the motion in the Lemonet hearing, which is where this was developed most fully, is that the court believed that because the parties interpreted Section 14.11 differently, there was an ambiguity. That's not California law. The fact that the parties disagree on what a provision means does not mean that the provision is ambiguous, nor does it mean that you get to a jury. What is your view of California law with respect to the opportunity of parties to introduce and have considered extrinsic evidence regarding the meaning of a contractual term? Because I think it's different than my little comfort zone of Oregon law on that point. Parties have wide latitude to present evidence, extrinsic evidence, plural evidence, and the like in support of their interpretations of the agreement. It's introduced provisionally. But the key point is, at the end of the day, that evidence has to be marshaled in support of an alternative meaning. There has to be something in that evidence that shows a foothold in the actual contractual language. Well, it seems to me that there was conflicting evidence in the form of how the parties acted as to whether they thought a contract had been formed and was binding. And I suppose the alternative meaning of the counterparts is that it was limited to just making sure that everybody didn't physically have to sign the same copy in the same place at the same time and had that very limited meaning. Why isn't that a possible interpretation? Your Honor, the second sentence of Section 14.11 gets right to the heart of this. I'd like to read it. There's a copy in our addendum to the open brief that also appears in the excerpts at page 711. It says, This agreement shall become binding when one or more counterparts hereof, individually or taken together, shall bear the signatures of all the parties reflected hereon as signatories. Right. But it doesn't say shall not become binding until or only if. It is a subject, it seems to me, to interpretation that the point of it is to allow counterparts. It's called counterparts. It's not called timing of when the agreement becomes effective. Your Honor, the preceding section, 14.10, says that the titles and the headings may not be relied on as an interpretive guide. So I don't think you can place any weight on the fact that this provision is titled counterparts. But looking at it, it just seems to me that the point of it is to say, look, it can be executed in any number of counterparts. The point of a contract provision like this is usually simply to say, look, we know the parties are scattered all over the place geographically and that with modern technology, thousands of copies may be in existence in various places, and you don't all have to sign the same exact piece of paper. Why isn't that a permissible view of this paragraph that that's all it's designed to do? Your Honor, that is one purpose of this paragraph, is to allow the parties as a housekeeping matter to execute the document on multiple pieces of paper if they choose. But it's not the only purpose. And if you read that as the only purpose, then you give no meaning to the words this agreement shall become binding when. And the last dozen words shall. Of course you do, because it requires everybody to sign something. But it, well, anyway. I guess the other point on that. I don't want to argue with you. I think it requires, if it requires all the parties to sign something, it requires all the parties to sign something, right? That's correct, Your Honor. And that's your position. That's correct. And it's undisputed. That never happened. Okay. Then my question following up on that is what evidence was, what extrinsic evidence is there that sheds light on what that second sentence means, if any? Your Honor, there was no testimony at the trial and there is no extrinsic evidence in the record about the meaning of this particular sentence. It was drafted by PSN in the original agreement. It remained unchanged through the entire sweep of negotiations. It was never varied. There was no drafting history. Then let me get your view on this and perhaps Mr. Kachet's. It's even better. But, look, there is evidence that Larry Chow, Chow, Chow? Chow. Chow said, I'm the one to talk to, okay? I'm the one to deal with on this thing. Then he, of course, signed a letter of intent. He basically at some point said the September 18th agreement was an agreement and it was only signed by BAIC, by him as its president. So his conduct can be taken to manifest his understanding that there was an agreement, even though it hadn't been signed by everybody. Your Honor, the California Supreme Court's cases, and I would particularly direct you to the Spinney case in this regard, indicate that partial performance makes no difference. If the parties have agreed in writing and the writing is plain that all must sign before any is bound, then the parties are held to the term of that writing. It cannot be impeached or trumped by parole evidence, extrinsic evidence, evidence of partial performance or course of performance. None of that matters. And PSM's entire argument rests on those forms of evidence. In the absence of any ambiguity, and there is none here, Section 14.11 controls. Let me move to a second and independent ground why no contract was formed in this case, and that's the argument based on California Insurance Code Section 1215.2. That statute required PSM, as an acquirer of an insurance company, to file a disclosure statement with the insurance commissioner. It's called a Form A. And the statute provides that you may not enter into an agreement until that Form A is filed. There's no dispute in the record that that form was never filed. The insurance commissioner's approval was never obtained. And in the absence of fulfilling those statutory prerequisites, no contract, no binding contract could be formed in this case. So how does this work in real life? The parties go to all the effort of getting that, going through those forms and getting that approval before they even know whether they have an agreement for sure? All the parties need to do, Your Honor, is to insert in the contract a provision that says, as a condition preceding to formation, this form will be filed and the commissioner will give his approval or her approval. And that never happened in this case. Those statutory prerequisites were never fulfilled, and as a consequence, no contract was formed. The facts are undisputed on that point. I'll yield to Mr. Kachet and then take some of the vote afterwards. Thank you. I would be very brief, Your Honor. Joseph Kachet put Larry Chau individually. Two issues with Mr. Chau. Whether or not he can be personally responsible for his signature as an individual. This case all turns on interpretation of the Coghlan case. You've seen it all throughout the briefs. I've argued in the brief why the Coghlan case does not apply. I won't repeat my arguments here, but the Coghlan case was quite simple. In the contract signed in Coghlan to sell a piece of land, Mr. Blair said he would be individually liable for the paving, the electricity, and everything else that went with the property. There's one other huge distinction in the Coghlan case, and that's the case that the court ruled on as to whether or not he could be individually liable. And the Coghlan case had in it, when you read that case, a stipulation entered into by the parties before the contract that he, Mr. Blair, would be liable. He would be the both agent and principal for signing the contract. You had no such stipulation here. So with all due respect, the court below just took the Coghlan case as a case. That said, now we've submitted two other cases which we think are directly on point. That's the Michigan appellate case and the New York appellate case. In that case, in those two cases, they had a contract where there were two lines. And they said in the modern commercial world, a corporate executive, an agent, whoever that may be, is not liable for the acts of the principal individually unless they so indicate. And in those cases, they had a separate line for the individuality. I'm not sure that this was considered not subject toيا    It was directly subjective. Scalia? Mr. Shephard? Shut meat, I ask you a question. I mean, this is you've got a jury verdict which says all the defendants are bound. All right. I'm going to come to that. What do you do with it? Yeah. We now get to phase two, question issue two, which is, A, the jury did find because she allowed an argument to be made that they could find that they were all the same people. We argued, we argued, the trial counsel argued strenuously. Well, sure. I mean, I understand how they could have found what they found. But the question, I mean, you're either stuck with the verdict form or I would suppose you have to say, as a matter of law, it should never have gotten that far, period. She ruled that we could not present alter ego to the jury. They could not present the alter ego question. She so found it in. I know that. I understand that. Right. But putting alter ego aside, I mean, is your argument, your argument isn't sufficiency of the evidence to support that verdict. Yes, it is. And I'll leave that on. Never mind. I just thought you were, I thought you were saying, look, he didn't sign it, that's the end of it. Oh, absolutely not. I'm saying that's at least one indication of it, that he didn't sign it. That's the end. Now, she moves forward saying under the Conklin case, I keep coming back to that, she said there's other factors that they can show. There's conduct as to how he acted. But we now get to the issue of damages. If I can switch to that very quickly, because I think that connects back. Under the contract, he could only be individually liable for two sections. That is, performing separate agreements, one a noncompetent. Which there were none of. None of those were ever entered into. So the only damages that could flow on a breach of contract, that's all that existed, kept to the jury. Well, that's not quite so, because if he's bound to the three paragraphs, there's an obligation to cooperation and other things. It seems to me he could then be on the hook for that. If there were damages put forth to the jury. There were no such damages. There were no damages ever presented. And in the transcript, as I point out, when the court asked, quote, what damages will the plaintiff be arguing as to Mr. Chau's breach of contract, counsel replied, all of the same damages that it is seeking against BAIC and or National Farm in part based on the theory in that she goes on. The judge said you cannot make that last argument. By the way, I didn't read that fully. As an individual and in part because we believe that Mr. Chau is the same as BAIC and National Farm and did not conduct himself in a way to be separate, quote the court, you cannot make the last argument that Mr. Chau is the same as BAIC and therefore should be liable for BAIC's breach. She made that absolutely clear. There was not a single item of damage as to how the plaintiff was injured as a result of his breach of any of those alleged items in paragraph 13 and 14. This is a situation I think that cries out for a breakdown.    And if you look at the verdict form, they should have presented damages. At the end of the case, when the verdict form was presented to the jury, they were on the theory that the damages were all the same, 40 million or whatever that number was. There was a request to break those down, and the Court said there's no alter ego here. Therefore, to say nothing of it, my time is up. Okay. Thank you, Mr. Katchad. Counsel. Good morning, Your Honors, and may it please the Court. Kent Richland appearing for Appellate PSM. Let me first address the issue of contract formation and the question of the ambiguity of the Counterparts Clause. All of the cases relied upon by all of the parties agree that if there is ambiguity here, then the issue is one of fact, and it is something for the jury to decide as to who the parties are. So in really slow, very simple language, can you tell me what the ambiguity is? I can. I certainly can. I can tell you that the Counterparts Clause is ambiguous in a number of ways. Number one, it is two sentences, and those two sentences, sentence one clearly talks about the circumstances under which counterparts were talking about counterparts, is what it says. Therefore, the second sentence sounds as if it is also talking about what happens when this document is signed in counterparts. Now, if the parties wanted to say that in all circumstances, no matter how the contract is signed, all parties must sign in order for it to be valid against any party, this is a very odd way to do it, to put it in a context. Well, it kind of says it's not going to be binding unless all the parties sign. When it's signed in counterparts. But there's no question. It wasn't signed in counterparts or anything else. It just wasn't signed, period. Clearly not signed in counterparts. That's correct. It wasn't signed in any fashion. Well, it was signed by Larry Chau and it was signed by PSI. Oh, so your argument that it wasn't signed in counterparts? It was not signed in counterparts. I know. It was signed as one document. Well, what the other side says is, but this clause says in one or more counterparts. Yeah. Therefore, they say one counterpart must be one document. No, no, no, no, no. Of course that's right. It can't be. It would be where there are multiple documents. Hold on a second. Hold on a second. Well, I hate to be obtuse about it. Okay. But I read this thing and it says this agreement shall become binding when in counterparts or individually at all, if everybody's on one original, the signatures of all the parties reflected hereon as signatories appear. Yes, but it appears to be talking about under circumstances where it is indeed signed in counterparts. Well, look, let's just back off. Yeah. This thing isn't signed by anybody except by BAIC, by the President, all right, and NPSM. So those are the two people whose signature appears anywhere. And that is the question as to whether that, in fact, is correct. Well, you could say that, in fact, because that would be something that would bind all of the parties. Those are the two signatures that appear, or if by signing as Larry Chow, it was understood by the parties that that would be sufficient to bind all of the Larry Chow parties, Larry Chow, NFSC, and Larry Chow. But where is the wiggle room in that sentence for you to get there? That's the heart of the question. The wiggle room comes from the fact that the sentence appears only to apply to counterparts. And the second wiggle room is the severability clause. What do you mean by that, Mr. Ray? Well, what it says is, the first sentence says we are now talking about that the contract can be signed in counterparts. The second sentence then appears to say when it is signed in counterparts. But it wasn't signed either in counterpart or original. It's just plain. It was signed in one. It was signed in one document. Let me ask you this. Yes. Is it possible under California law, in your view, for a party who has never signed a contract to be bound by that contract? Well, it is possible. So if Judge Graber and Judge Aldrich and you and I are parties, named parties to a contract, and neither Judge Graber nor I signs it, are we bound to that contract? Well, not if the extrinsic evidence says that it was required that you sign. If the extrinsic evidence, however, shows that you indeed need not sign, for example, the Coughlin case is a good example. This was signed only by the individual as an agent. That was how it was stated. Just as Larry Chau here signed this contract only on behalf of BAIC. But the Court then took extrinsic evidence, as is permitted under California law, and said, we see that there was an intention of the parties also to bind Coughlin as an individual. Because under California law, as Judge Graber pointed out, it's a little bit different than the law in most jurisdictions. Under the PG&E case, first you admit all the evidence that might bear on the question of how you interpret the language. But let me go beyond that, because there is a direct contradiction between the counterpart's clause as interpreted by the defendants and another section of the contract, and that section is the severability clause. But that doesn't make sense to me, because the severability clause is only germane if there's a contract. I mean, otherwise, what difference does it make? I mean, the severability clause is meant to say, look, if, for example, the insurance commissioner bounces out one paragraph of the contract, we can toss that paragraph, but we still have a deal. But you have to have a contract form before the severability clause is even triggered. Don't you think? Well, and that's right. What we're doing now, though, is looking to see whether the parties could conceivably interpret this contract, whether the jury could conceivably interpret this contract as being permissible to be signed by one party on behalf of all the parties that that person had the responsibility for signing, and whether they could conclude that it would be a complete contract. That is, did the parties necessarily agree that all parties had to sign? But doesn't that depend on the relationship between the parties? For example, if they're partners, then one signs and it controls the other partners. That's right, it does. If one party signed and controls all the other parties, then we can look to that as indicating that when that party signed, it was reasonable for all of the parties to say, that's enough. We now have a complete contract. But is that a question for a jury, or is that a question for a legal question and not a factual question? It's a question for a jury if there is conflicting evidence on the party's interpretation of the language of the contract. Let me just direct to the severability clause, Judge Weimer, because I understand what your question is. But what it says is that if any provision of the contract, and presumably any provision refers to all provisions of the contract, is unenforceable, the agreement is still in full force and effect as to other persons. So it doesn't talk about just simply parties to the contract or have signed the contract. But are you saying then, is your point that the counterpart's paragraph is unenforceable? No, it is not unenforceable. What it means is that it could be interpreted as meaning that it's not necessary to have all the parties sign the contract in order for it to be enforceable against the parties that do sign. That's all. But the parties that do sign can reasonably interpret this contract to mean that we are bound, if we sign this contract, even if everybody else didn't. What is the effect of having on this analysis of the form of the signature page? And by that, I mean the following. Larry Chao is signing only as to two articles plus one section. Is it a permissible implication of that, that his signature is irrelevant with respect to all the other articles and sections of the contract and their effectiveness? Well, it means that his signature only binds him to those things to which he's agreeing. But the jury found that he did agree to that. I understand that. But does that create an ambiguity also with respect to what it means to sign or not sign on this page? Well, I'm not sure that it creates an ambiguity. But it certainly creates a – it certainly goes to the jury's determination of what was in fact understood by the parties as being a complete contract. Well, I guess here's what I was thinking about. Yes. Because with respect to everything except those three segments, the other signatures are complete. I mean, there's nothing for him to say one way or the other. So when the counterparts section says the agreement is binding when people have signed it, he's never going to sign with respect to Articles 1 through 7 and 9, 10, 11, and 12 and most of 8. That's right. So I guess what I'm struggling with is how that fits with the counterparts. Well, I think you're right. I think what you're – if what in fact – if what you are saying is that the counterparts clause can't possibly mean that all parties must agree to the entire contract in order for – That's what I'm struggling with, I guess, is to whether that's fair or not. I think that's another ambiguity. I think that certainly is. Well, that seems crystal clear. I mean, but Chau can't be bound to anything – or Mrs. Chau could not be bound to anything except the three provisions. You can't – you can't think of any other clause that's bound to that. You can't think of any other clause that's bound to that. They didn't sign. Well, they didn't sign. The question is, is what – were there signature – A, were there signatures all required. And the second question is by the signature that was given, was that in effect an agreement to sign on behalf of all of the Larry Chau signature parties? You know, the context here is that – Well, I'm having difficulty with that. Yes. Because the signature page does provide separate lines. I totally understand your argument with respect to binding B-A-I-C, because he signs as president and he signs. The company is bound. But it seems to me that there's quite a deliberate lack on his part individually to sign it. The context is that Fergash says we must have a complete signed agreement within one week of the letter of intent. That is agreed to by all the parties. This is after a lot of fooling around and back and forth and dropping out of the agreement and back and forth. That is agreed to by Chau. On the day that that signature is to be – that that contract is to be final, Chau signs where he signs. PSM has signed. We have a completed contract, at least according to what the parties understood. For B-A-I-C. Well, a binding contract, because what Fergash had said was we've got to have a done deal. It's got to be over. It's got to be done by that day. That was the understanding. In October, Chau delivers documents and says I'm delivering these documents pursuant to the agreement between B-A-I-C, N-A-F-F-C, Larry Chau, and PSM. He says that precisely. He affirms that that agreement exists. It is therefore clearly – that's not just course of conduct. That's an actual affirmation that, in fact, the contract that was signed on the 19th was binding as to all those parties. Chau continues to act as if it were binding. He negotiates. He starts to negotiate the deals under that. It is understood by the parties that that is a fine, a done deal under all the circumstances. This certainly is substantial evidence from which a jury could conclude that that's what the parties understood. Let me quickly ask you before you run out of time what your response is to the argument concerning insurance code section 1215.2. Well, we have several responses. Number one is that this was waived because it was never raised in a 50A motion. Clearly, it was something that had to be raised. The response to that is apparently something like, well, this was just a question of law, and therefore, it didn't have to be raised. Well, that's not true. It may have been possible to present expert evidence as to the meaning of the section. It may have been possible to show evidence of an estoppel as to why they could not rely on this. But it was never raised, so that is waived. Number two, the section itself indicates that the remedy for violation is a whole set of And, in fact, the Commissioner can then fine and bring actions and so on and so forth. In fact, there's no compliance. There is absolutely nothing in the section that indicates that it's to have some kind of effect on the civil liabilities of the parties to the contract. And, in fact, the case file that we've cited indicates that an analogous section was, in fact, interpreted the same way. Just one more thing with respect to Larry Chau and the Coughlin case. Counsel mentioned that there was a stipulation in the Coughlin case that somehow distinguishes it from our case. But that stipulation was not something that was looked at in relation to Mr. Coughlin's liability. That was looked at as something that had absolutely nothing to do with that. It never went to the question of damages. So I suggest that we ask the Court to read the Coughlin case very carefully. Because it really is the analogous situation to what we have here, where it was signed by one party as agent, said agent underneath, just as here, where Chau signed it, said B-A-I-C underneath. And the California Supreme Court in the Coughlin case said that it was clear from the surrounding circumstances that the parties understood that Mr. Coughlin himself was also going to be bound. That was a jury question in Coughlin. It's a jury question in this case. Unless the Court has further questions, I'll sign it. Thank you very much. Thank you.
judges: Rymer, Graber, Aldrich